## MARTIN *v.* THE UNION PACIFIC RAILROAD CO.

Evidence—Custom—Usage.—The general custom or rules of a railroad company, or of various companies, cannot affect a special contract or modify the same, where such contract contains no ambiguity of terms.

Idem.—Neither is proof of such general custom or usage permissible, unless it is also shown that such has been so in the dealings of such companies with outside parties, they understanding and consenting thereto.

Idem.—It must be a general usage between the company and those who contract with it.

Idem.—While the freight books of a company may be used to refresh the memory of a witness who has made entries in them, such books in themselves are no evidence, and were properly excluded.

Appeal from the District Court for Laramie County.

A sufficient statement of this case is contained in the opinion.

*W. R. Steele,* for appellant.

This appeal is prosecuted to reverse the judgment of the court below, rendered at the March term, A.D. 1873.

The first error assigned is in rejecting the evidence offered by defendant to show by the witness, E. P. Vining, that there was a general rule on all the railroads of the United States as to the time special rate contracts should expire. This was an offer to prove the usage in the particular business and was competent: 1 Greenl. on Ev. 292–4; Red. on Carriers, 173; 2 Red. on Railways, 135; *St. John et al.* v. *Van Santvoord,* 25 Wend. 660; *St. John* v. *Van Santvoord,* 6 Hill, 157.

Second error: refusal to allow McKay to testify from the freight books: 1 Greenl. on Ev. sec. 117 *et seq.* Error

in neglecting to charge as to right of possession: Code of Proc. sec. 186, p. 540; Seney's Code, 198. Error in refusing to charge the jury as requested in reference to the custom as to the expiration of special freight rates: 1 Greenl. on Ev. secs. 292, 294; Red. on Carriers, 173; 2 Red. on Railways, 135; *St. John* v. *Van Santvoord*, 6 Hill, 157.

*W. R. Corlett*, for appellee.

The appellee, in answer to the first assignment of error, insists that the ruling of the court was correct, for two reasons:

I. That the evidence excluded was irrelevant, as the said Vining testified that he made the contract in question with appellee, and that by its express terms it was to expire on the first day of December of the current year.

II. Because the evidence offered would have tended to overthrow the contracts as set up by both parties; and it may be added that the offer was not to prove a general custom or usage, but a general rule of the railroads of the United States. Custom or usage means the practice of both parties to contracts, not simply the rule of one of the parties: 2 Par. on Con. 535, 547; 1 Greenl. on Ev., secs. 49 to 56. As to the second error complained of, an examination of the record will disclose the fact that no proper foundation was laid for the introduction of the books, and the witness McKay was simply asked, not to state a fact within his own knowledge or as to the character of the books, but as to what the books contained or showed. On this point see Laws of Wyoming, 1869, p. 574, sec. 343; 1 Greenl. on Ev. sec. 115 to 121. As to the third assignment of error herein, it is to be remarked, first, that the assignment does not correspond with the record. The exception in the record being only to a portion of the instructions of the court. Hence the alleged error complained of and excepted to in the trial appears to be abandoned in the assignment of errors in this court, and a new error assigned here which was not saved by exception in the court below. Upon the error assigned,

to wit, the charge of the court, however, the appellee refers to 4 Wend. 483; 3 Wend. 109; 3 Gra. & Wat. chap. 10. As to the fourth error assigned, the exception being to the refusal of the judge to give several propositions together, and some of them being erroneous and inapplicable to the case, the refusal was right, though some of the propositions asked for may have been correct: 3 Graham & Waterman, 717, 718.

By the Court, FISHER, C. J. This was an action in replevin, brought by John H. Martin for the recovery of damages for the alleged wrongful detention of thirty car-loads of hay from McPherson Station, and from a sideling at Gaunett, in the state of Nebraska to Cheyenne, and Camp Carling, in the territory of Wyoming, to fill a contract for the United States; under an alleged special contract entered into with and between the parties to this action. Under the terms of the special contract, the defendant undertook to furnish cars to the plaintiff, at rates much less than the schedule rates, as published in the ordinary course of their business. The evidence on the part of the plaintiff below is, that on the tenth of September, 1871, he submitted to the freight agent of the defendant below, an interrogatory written with a lead pencil in the following words:

"E. P. Vining, G. F. A.: How much per car-load will you charge me for three hundred cars of hay from McPherson and Julesburg to Cheyenne? Fifty cars of grain from Omaha, Fremont and G. Island to Cheyenne; fifty cars of flour from Omaha to Cheyenne, and one hundred and seventy-five cars of wood from Sherman to Cheyenne. J. H. Martin."

"After I submitted this proposition to Mr. Vining we had some talk, and he made me this answer:"

"Hay, McPherson to Cheyenne, large cars, $46; small, do., $32; Julesburg to Cheyenne, large cars, $40; small cars, $30; grain and flour, Omaha, Fremont and G. Island to Cheyenne, $70, cars, car-loads not to exceed 20,000 pounds;

wood, Sherman to Cheyenne, $12.50, car not exceeding 500 cords, all above 500, $16.50 per car."

"This answer is in the handwriting of Colonel Brownson, except the modification as to the quantity of wood, which Mr. Vining placed upon it in pencil himself. This hay replevined was shipped on this contract. McKay, agent, refused to deliver the hay because the freight was not paid."

The evidence further shows, being admitted by defendant below, that a tender was made of the amount of the freight according to the terms of the above contract. It was claimed by the defendant below, that admitting the special contract to have been made, that it expired with the year 1871, under the rules of the company; one of which was, that all special contracts ended on the thirty-first of December; that the plaintiff was furnished with a circular issued by the company, giving notice that all special rates would cease on and after that day; and that any freight to be shipped would be subjected to the regular tariff of rates of the company; which at that time would amount to seventy-one dollars and five cents per car.

The court below submitted the question of fact to the jury, with the instruction, that if they believed from the evidence that such a contract was entered into between the parties without reference to time, that the law would imply that the freighting should be done in a reasonable time, and that the defendant would be bound by its contract, unless it could show that there was unnecessary delay on the part of the plaintiff; that no matter what were the rules of the railroad company, if it agreed to carry the freight in question at stipulated rates, and the plaintiff proceeded to do the shipping without any unreasonable delay, the company would be bound by its special contract, if entered into by an agent having authority to make such a contract. The jury were further instructed that if they found that such a contract had been made, and that the plaintiff had performed his part of said contract without delay; that a tender

of the full amount of freight had been made, in accordance with the contract; that the plaintiff was entitled to the immediate possession of the property, at the time the tender was made, and that the plaintiff had sustained damages by reason of the detention; that then their verdict should be for plaintiff; that he receive the property with such damages as, in their judgment, he had sustained; while on the other hand if they should find that there was not such a special contract, or that if there was a contract, and that the plaintiff had failed to comply with his part of its terms, by not shipping the hay as rapidly as possible; that the neglect or refusal on his part would set aside the special contract, and subject him to the ordinary schedule of freights of the company, and that then they should find for the defendant and in either case, should assess the damages in such sum as the evidence warranted.

The errors complained of by the appellant are: 1. That the court erred in refusing to permit a custom of other railroads, as to the expiration of all special rates at the end of each year; 2. That the court below refused to permit the agent of the appellant to testify as to the books of the appellant; and, 3. That the court erred in its instructions to the jury.

With regard to the first complaint, we fail to see any error. The record shows that the custom of the defendant below was permitted to go to the jury without objection, and that having been permitted was certainly as much as should have been allowed, and we think with the court in its instructions to the jury, that if they found that the special contract had been entered into in good faith, the railroad company was as much bound by it as the plaintiff in the action below, and so long as he carried out his part of the contract according to its terms, he had a right to expect the defendant below to do the same. It surely would not be held that if the contract had been made within a few days of the close of the year, that either party had a right to rescind it at pleasure, without the con-

sent of the opposite party. And if it could not be rescinded if made a very short time before the close of the year, the difference in time would not give them any more right to do so. This contract was for the transportation of a definite quantity of hay, without regard to time, and no time being mentioned, the legal presumption would be that the plaintiff below should have a reasonable length of time to have the hay carried over defendant's road, and unless it was shown that he was guilty of unnecessary delay in doing the work, he was entitled to have the stipulations of the contract carried out in good faith.

With regard to the second error, we do not clearly see how the freight-books could be admitted in evidence; the law for the convenience of suitors permits the account-books of original entries to be given in evidence, and other books, such as freight-books of a railroad company, may be used as memoranda to refresh the recollections of a witness, but they can only be used for that purpose, and not to prove that the entries therein are correct, and thus make out a case unsupported by other corroborating statements.

The third error is too indefinite to be relied upon; very possibly the judge below did err in some of his instructions, but we fail to see in the instructions given, or in those refused anything to mislead the jury to the detriment of the defendant below. Another error complained of (for there are several not referred to) is that the damages are excessive. This may possibly be true, but from the fact that the case submitted to the jury was to be determined more from the facts than from legal propositions, and the jury being competent to pass upon the facts, the courts will not, as a general thing, interfere with verdicts of this character, unless it be shown that there was a misconception of the facts as given, or a palpable intention to commit a great wrong. We therefore do not find anything to justify us, as an appellant court, to interfere with the verdict.

The judgment is affirmed.